Harvey Jackson TORIX,
Plaintiff–Appellant,

v.

BALL CORPORATION, an Indiana Corporation, Defendant–Appellee.

No. 86–2681.

United States Court of Appeals,
Tenth Circuit.

Dec. 9, 1988.

Albert R. Matthews of Bonds, Matthews, Bonds & Hayes, Muskogee, Okl., for plaintiff-appellant.

Neil F. Layman, Tulsa, Okl., for defendant-appellee.

Before McKAY, ANDERSON, and BRORBY, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.

I.

Plaintiff Harvey Jackson Torix appeals a judgment entered by the United States District Court for the Eastern District of Oklahoma in favor of defendant Ball Corporation following a non-jury trial. Mr. Torix had applied for, and been denied, disability benefits under a pension plan organized by the Corporation under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982). After unsatisfactorily pursuing administrative review of the denial, Mr. Torix filed this action. In reviewing the actions of the Plan's Pension and Insurance Committee, the district court concluded it must uphold the committee's decision unless

plaintiff established that the committee had acted arbitrarily, in bad faith, or fraudulently in denying the claim. The court found that the action by the plan committee was "based on competent independent medical evidence and evaluation." *Torix v. Ball,* No. 85–226–C, slip op. at 4 (E.D.Okla. Oct. 8, 1986). Because plaintiff had not sustained his burden of showing the committee had proceeded improperly, the court granted judgment for defendants.

## II.

The trial court made findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52. In this appeal only the trial court's conclusions of law are at issue. Questions of law are considered by the appellate court *de novo. In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263, 1266 (10th Cir.1988). Thus, this court applies the same standard of review as would be applied by the trial court in making its initial ruling. *Boise City Farmers Co-op v. Palmer,* 780 F.2d 860, 866 (10th Cir.1985).

## III.

■ "The decision of the plan representatives to deny [disability] benefits will be upheld unless such decisions are '(1) arbitrary and capricious, (2) not supported by substantial evidence, or (3) erroneous on a question of law.'" *Sage v. Automation, Inc. Pension Plan and Trust,* 845 F.2d 885 (10th Cir.1988) (citing *Peckham v. Board of Trustees of the Int'l Broth. of Painters and Allied Trade Unions,* 653 F.2d 424, 426 (10th Cir.1981)). An administrator's decision is not arbitrary or capricious if it is a reasonable interpretation of the plan's terms and was made in good faith. *Dockray v. Phelps Dodge Corp.,* 801 F.2d 1149, 1152 (9th Cir.1986). The key to this case, therefore, is a determination whether the

committee's decision represented a reasonable and good faith interpretation of the plan's terms. Citing Oklahoma law, plaintiff urges that the committee's actions in construing the terms of the plan were arbitrary and capricious, because they did not take into account his age, limited educational background, and the unavailability of suitable employment in the area.[1]

Ball Corporation's Pension Plan was adopted pursuant to ERISA. Section 514(c)(1) of ERISA, 29 U.S.C. § 1144(c)(1), provides that the act "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." The broad language of this chapter preempts all state laws concerning employment benefits. *Peckham v. Board of Trustees of Int'l Broth. of Painters and Allied Traders Union,* 719 F.2d 1063, 1065 (10th Cir.1983); *accord Jung v. FMC Corp.,* 755 F.2d 708 (9th Cir.1985); *Helms v. Monsanto Co.,* 728 F.2d 1416 (11th Cir. 1984). Because "Congress intended to establish employee benefit plan regulations as an exclusive federal concern with federal law to apply exclusively even where ERISA furnishes no answer," *In re White Farm Equipment Co.,* 788 F.2d 1186 (6th Cir.1986), Mr. Torix's reliance on Oklahoma law in this case is misplaced. Nevertheless, the principle he relies on in Oklahoma law is important here. As the Eleventh Circuit has so cogently noted:

> [U]nder ERISA's legislative scheme, this court is empowered to formulate rules of law to govern various aspects of the employee benefit field. As Congress pointed out, "[I]t is also intended that a body of law will be developed by the courts to deal with the issues involving rights and obligations under private welfare and pension plans." 120 Cong.Rec. 515, 751 (daily ed. Aug. 22, 1974). Yet, in formulating these laws courts must be

---

1. The disability provision of the company's plan provides:

> A member shall be deemed to be totally and permanently disabled when, on the basis of qualified medical evidence, the Company finds such Members to be *totally and presumably permanently prevented from engaging in any occupation or employment for wages or profit* as a result of bodily injury or disease,

either occupational or non-occupational in cause, and the said disability shall have continued for a period of six (6) consecutive months unless this condition shall be waived by the Company as to the member's total and presumably permanent disability.

Ball Corporation's Pension Plan, Section 4.3(a) (emphasis added).

guided by the general policies underlying ERISA ... *Congress wanted to assure that those who participate in the plans actually receive the benefits they are entitled to and do not lose these as a result of unduly restrictive provisions* or lack of sufficient funds. H.R.Rep. No. 93–807, 93rd Cong., 2d Sess. 3, *reprinted in* 1974 U.S. Code Cong. & Admin.News 4639, 4670, 4676–77.

*Helms,* 728 F.2d at 1420 (emphasis added).

Our circuit has not previously examined the precise issue presented herein, that is, what constitutes a reasonable interpretation of the plan's terms so as to survive scrutiny under an "arbitrary and capricious" review standard. We therefore turn for guidance to the persuasive analysis of the Eleventh Circuit in *Helms v. Monsanto Co.,* 728 F.2d 1416 (11th Cir.1984).

In *Helms,* plaintiff sought review of a trial court judgment upholding a denial of disability benefits. Mr. Helms was a laboratory technician at a Monsanto chemical laboratory and a covered employee under Monsanto's Disability Income Plan. After developing vision problems, Mr. Helms was diagnosed as suffering from retinitis pigmentosa, an incurable eye disease. By 1980 the disease had progressed to the point that Mr. Helms could no longer work at Monsanto.[2] He submitted a Claim for Disability Benefits which was denied on the basis that he was not totally and permanently disabled within the plan's definition. The plan provided, *inter alia,* that the employee be "totally disabled by reason of bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit (as determined by the Corporation)." 728 F.2d at 1418.

An appeal of the denial resulted in a follow-up examination by a jointly selected physician-evaluator. The selected physician agreed with the diagnosis and concluded that Mr. Helms' condition would preclude employment requiring visual acuity. Nevertheless, in light of the express terms of the plan the physician concluded that Mr. Helms was not totally and permanently disabled from engaging in *any* occupation for remuneration or profit, and therefore was not disabled under the plan.[3] The district court concluded that the physician had not acted arbitrarily or capriciously in reaching his decision, and, therefore, Monsanto had properly denied Mr. Helms the benefits of the plan. The Eleventh Circuit reversed and remanded, stating:

Total disability under this type of provision is not considered to exist if the insured can follow any remunerative occupation, whether in his present vocation or another. The phrase should not be given an absolute and literal interpretation. It should not mean that the individual must be utterly helpless to be considered disabled. It must be a relative term which means that the individual is unable to engage in a remunerative occupation or to do work in some profitable employment or enterprise. Permanent disability is a question of fact that depends upon all the circumstances of a particular case.

*Helms,* 728 F.2d at 1420.

In determining plaintiff's entitlement to disability benefits under the provisions of the Monsanto disability plan, the *Helms* court needed to define the phrase "any occupation or employment for remuneration or profit."[4] The court discarded a

---

**2.** According to the court, "Mr. Helms was not permitted to return to work at Monsanto because they didn't have any work that he could do at the chemical laboratory." 728 F.2d at 1418 n. 3.

**3.** In the course of the *Helms* litigation, the physician was asked to explain his reasoning as to why he concluded that Mr. Helms was not totally and permanently disabled. He responded: Well, I felt that Mr. Helms was certainly disabled, but, according to that definition, with that word, "any occupation or employment

for remuneration or profit," I really couldn't think of any disability compatible with conscious life that would allow me to say anybody was disabled within the definition.... *Id.* at 1419.

**4.** Compare the Monsanto Plan language with that of the Ball Company Pension Plan, which provides for disability payments if claimant is "totally and presumably permanently prevented from engaging in *any occupation or employment for wages or profits*" as a result of injury or disease. Ball Corp. Pension Plan, Section 4.3(a).

literal reading of the plan's terms because it would render the plan "totally meaningless" if benefits could only be paid if the claimant had "no conscious life."[5] 728 F.2d at 1420. In order to reach a reasonable interpretation of the phrase, the court turned for guidance to analogous insurance and social security cases.[6]

A useful concept developed in insurance and social security cases is that of gainful activity or employment. Referencing cases from our circuit which define this term, *see Markham v. Califano*, 601 F.2d 533, 534 (10th Cir.1979) (citing *Hill v. Califano*, No. 78–1235 (10th Cir. May 30, 1979)), the *Helms* court adopted our view that "gainful activity means performance of substantial services with reasonable regularity, either in competitive or self-employment." 728 F.2d at 1421. The court rejected a strict construction of the plan's terms "which would deny benefits to the disabled if he should engage in some minimal occupation, such as selling peanuts or pencils, which would yield only a pittance. The insured is not to be deemed 'able' merely because it is shown that he could perform some task." *Id.* 728 F.2d at 1421. The *Helms* court held that to bar recovery of disability benefits under an ERISA-covered plan, "the earnings possible must approach the dignity of a livelihood." *Id.* Under this standard plaintiff must "show physical inability to follow any occupation from which he could earn a reasonably substantial income rising to the dignity of an income or livelihood, even though the income is not as much as he earned before the disability." *Id.* at 1421–22.

We believe the facts and analysis followed by the Eleventh Circuit in *Helms* parallel, and are appropriate to, the case before us. Here, as in *Helms*, we have a claimant who has been a long-term company employee[7] but who is now physically unable to perform the work required by his position.[8] Also as in *Helms*, plaintiff applied for and was denied disability benefits after an examination and disability determination by an independent medical evaluator. Finally, the terms of the disability plan involve language which is remarkably similar to that at issue in *Helms*. We believe that the policy concerns which underlie ERISA would be severely undermined if we endorsed a literal reading of the plan's terms. Thus we join the reasoning of the Eleventh Circuit and hold that a reasonable interpretation of a claimant's entitlement to payments based on a claim of "total disability" must consider the claimant's ability to pursue gainful employment in light of all the circumstances. The standard to be applied will require the claimant to establish a physical inability to follow any occupation from which he can earn a reasonably substantial income rising to the dignity of an income or livelihood, although the income may not be as much as was earned prior to the disability. If plaintiff meets his burden, recovery may not be denied on the basis of overly restrictive interpretations of the plan's language.

Because the committee's denial of disability benefits may have been based on an unduly restrictive and therefore unreasonable interpretation of the plan's provisions, we remand for a new trial.[9]

REVERSED AND REMANDED.

---

5. *See supra* note 3.

6. The *Helms* court carefully noted that the standards used in adjudicating insurance and social security cases "were not applicable to plans covered by ERISA." Nevertheless, the court believed it instructive to review how different courts had interpreted cases raising similar issues. 728 F.2d at 1421 n. 6.

7. The record indicates that Mr. Torix was employed by the Ball Corporation as a machinist for nearly 25 years. Record, vol. 1, Doc. No. 10, *Opinion* at 1.

8. Mr. Torix sought to return to work but was informed no positions were available for him due to his physical limitations. Record, vol. 1, Doc. 10, *Opinion* at 2.

9. Since we have found that the interpretation of the plan's provisions may have been unreasonable, we need not reach the issue of good faith in the administration of the plan. For purposes of this appeal we have assumed, without deciding, that the parties acted in good faith. We emphasize, however, that our standard requires

that both prongs—reasonableness *and* good faith—be met.